**BRODSKY & SMITH**
Evan J. Smith, Esquire
240 Mineola Blvd.
Mineola, NY 11501
Phone: (516) 741-4977
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RONALD SEXTON,<br><br>      Plaintiff,<br><br>   vs.<br><br>REDBOX ENTERTAINMENT, INC.,<br>GREGORY W. FRENZEL, NEAL P.<br>GOLDMAN, GALEN C. SMITH,<br>KIMBERLY KELLEHER, and ROBERT<br>H. WARSHAUER,<br><br>      Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (a) of the Securities<br>   Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities<br>   Exchange Act of 1934<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, Ronald Sexton ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## <u>SUMMARY OF THE ACTION</u>

1. Plaintiff brings this stockholder action against Redbox Entertainment, Inc. ("Redbox" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and together with the Company, the "Defendants"), Chicken Soup for the Soul Entertainment, Inc. ("Parent"), merger vehicles RB First Merger Sub Inc. and RB Second Merger Sub LLC ("Merger Subs," and together with Parent, "CSSE"), for violations of Sections

14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to CSSE as a result of an unfair process, and to enjoin an upcoming vote on a proposed all-stock transaction (the "Proposed Transaction").

2.     The terms of the Proposed Transaction were memorialized in a May 10, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Redbox will become an indirect wholly-owned subsidiary of CSSE. Redbox public stockholders will receive, in exchange for each share of Redbox stock, 0.087 shares of CSSE Common Stock.

3.     Thereafter, on June 15, 2022, CSSE filed a Registration Statement on Form S-4 (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.     The Proposed Transaction is unfair for a number of reasons.  Significantly, the Registration Statement describes an insufficient process with only one goal in mind – to sell the Company to CSSE.

5.     The Proposed Transaction is unfair for a number of reasons.  Significantly, the Registration Statement describes an insufficient process in which the Redbox Board failed to include a collar mechanism to ensure that the consideration payable to Plaintiff and other Redbox stockholders remained in a realm of reasonableness.

6.     In violation of the Exchange Act, Defendants caused to be filed the materially deficient Registration Statement with the SEC in an effort to secure Plaintiff's vote in favor of the Proposed Transaction.  The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below,

the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Redbox and CSSE, provided by Redbox and CSSE to the Board's financial advisor Kroll, LLC ("Duff & Phelps") and CSSE's financial advisor Guggenheim Securities ("Guggenheim"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Duff & Phelps and/or Guggenheim, if any, and provide to the Company and the Board.

7.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

**PARTIES**

8.      Plaintiff is a citizen of Virginia and, at all times relevant hereto, has been a Redbox stockholder.

9.      Defendant Redbox operates a network of self-service entertainment kiosks in the United States. Redbox is incorporated under the laws of the State of Delaware and has its principal place of business at 1 Tower Lane, Suite 800, Oakbrook Terrace, Illinois.  Shares of Redbox common stock are traded on the Nasdaq under the symbol "RDBX."

10.      Defendant Gregory W. Frenzel ("Frenzel") has been a Director of the Company at all relevant times.  In addition, Preston serves as the Company's Chief Executive Officer ("CEO").

11.      Defendant Neal P. Goldman ("Goldman") has been a director of the Company at all relevant times.

12.      Defendant Kimberly Kelleher ("Kelleher") has been a director of the Company at all relevant times.

13.      Defendant Galen C. Smith ("Smith") has been a director of the Company at all relevant times.  In addition, Smith serves as the Company's Chief Executive Officer ("CEO").

14.     Defendant Robert H. Warshauer ("Warshauer") has been a director of the Company at all relevant times.

15.     Defendants identified in ¶¶ 10 - 14 are collectively referred to as the "Individual Defendants."

16.     Non-Party Parent is an entertainment company based in the United States. Shares of Parent common stock are traded on the Nasdaq Stock Exchange under the symbol "CSSE".

17.     Non-Party Defendants Merger Subs are each a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

19.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### Company Background

21.    Redbox Entertainment Inc. operates a network of self-service kiosks in the United States. It operates a network of approximately 38,000 self-service kiosks, where consumers could rent or purchase new-release DVDs and Blu-ray Discs. The Company provides installation, merchandising, and break-fix services to other kiosk businesses. It also produces, acquires, and distributes movies through its film distribution label, Redbox Entertainment, LLC, providing rights to talent-led films that are distributed across the company's services, as well as through third party digital services. In addition, the company offers transactional and ad-supported digital streaming services, which include Redbox On Demand, a transactional service that provides digital rental or purchase of new release and catalog movies and TV content; Redbox Free On Demand, an ad-supported service providing free movies and TV shows on demand; and Redbox Free Live TV, an ad-supported television service giving access to approximately 100 linear channels. The Company is based in Oakbrook Terrace, Illinois.

22.    Despite a recent dip in price performance, the Company's stock has enjoyed a significant increase in value, reaching a peak of $27.22 in the last 52 weeks.

23.    Further, the Company expressed significant optimism in the last year, forecasting that its total revenue will rise from $400 million in 2021 to $1.11 billion in 2023, and its adjusted EBITDA will jump from $40 million to $237 million.

24.    As recently as May 4, 2022, optimism was high in regards to the Company stock as it had seen a 120% increase in just five days. This increase followed significant efforts by the Company to rapidly expand their streaming service.

25.    Speaking on the Company's momentum, CEO Galen Smith stated that "we plan to continue our strong momentum and accelerate our digital transformation" …. "Redbox is equipped

to advance our goal of creating a one stop experience that spans multiple entertainment mediums and simplifies the streaming experience. We are eager to capture the significant and growing opportunities ahead, take our business to the next level and achieve profitable growth for Redbox shareholders."

26.     The momentum is not an anomaly but is indicative of a trend of future potential success by Redbox.

27.     Despite this upward trajectory, the Individual Defendants have caused Redbox to enter into the Proposed Transaction without providing requisite information to Redbox stockholders such as Plaintiff.

***The Flawed Sales Process***

28.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

29.     Notably, the Registration Statement does not provide adequate information as to why the Board allowed the Proposed Transaction to be entered into without a collar mechanism preventing the stock consideration payable to Plaintiff and other Redbox stockholders to dipping to an unreasonable level.

30.     Additionally, the Registration Statement fails to provide adequate information regarding the specific powers of the Strategic Committee created to explore strategic alternatives, and specifically, if the Strategic Committee's approval was required for any potential strategic alternatives.

31.     The Registration Statement does not adequately explain the reasoning as to why the Board decided to engage multiple financial advisors.  Further, there is no disclosure as to the extent of compensation paid or is still owed to PJT Partners LP ("PJT") and Alvarez & Marsal North America, LLC ("A&M") in exchange for the performance of their duties, nor was there adequate disclosure as to the scope of what their duties were.

32.     In addition, the Registration Statement is silent as to the nature of the confidentiality agreement entered into between the Company and CSSE and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Registration Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

33.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

34.     On May 11, 2022, Redbox and CSSE issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **COS COB, Conn., May 11, 2022 (GLOBE NEWSWIRE)** -- Chicken Soup for the Soul Entertainment, Inc. (Nasdaq: CSSE), one of the largest operators of advertising-supported video-on-demand (AVOD) streaming services, and Redbox Entertainment Inc. (Nasdaq: RDBX), a leading entertainment company, have entered into a definitive agreement under which Chicken Soup for the Soul Entertainment will acquire Redbox.
>
> The combination of Chicken Soup for the Soul Entertainment and Redbox will create a leading independent, integrated direct-to-consumer media platform delivering premium entertainment for value conscious consumers. The combined company will have increased scale across content production and distribution, with a massive content library, more than 38,000 kiosks nationwide, extensive digital capabilities in AVOD, TVOD, PVOD, and FAST, and access to millions of targeted customers, including nearly 40 million Redbox Perks members.

Together, the combined companies will have the industry's premier, independent AVOD platforms, one of the fastest growing segments of the overall entertainment industry. According to a recent study by IAB, ad spending on connected TV platforms increased 57% from 2020 to 2021 and is expected to increase another 39% this year.

"Today marks a transformative moment for Chicken Soup for the Soul Entertainment and an inflection point for the ad-supported streaming industry," said William J. Rouhana Jr., chairman and chief executive officer of Chicken Soup for the Soul Entertainment. "Our acquisition of Redbox will accelerate the scaling of our business as it combines complementary teams and services to create the streaming industry's premier independent AVOD. Redbox has 40 million customers in its loyalty program and high-potential digital television assets including carriage of over 130 FAST digital channels on its Free Live TV platform, as well as a robust TVOD and PVOD platform. Together, we will build a fully developed AVOD and FAST streaming business: proven branded streaming services, formidable content and production capabilities, and a strong AVOD and FAST ad sales operation."

"We believe that Chicken Soup for the Soul Entertainment is the ideal partner for Redbox. By joining forces, we will accelerate Redbox's transition from a physical to high growth digital media company and be the only entertainment provider truly focused on value for consumers," said Galen Smith, chief executive officer of Redbox. "This all-stock transaction provides Redbox stockholders with the opportunity to participate in the significant near- and long-term upside potential of a diversified and growing company with greater scale and resources. With our footprint of more than 38,000 kiosks, diverse content libraries and combined streaming platforms, we will be well positioned to deliver consumers a wealth of high-quality entertainment options."

Rouhana continued, "More and more viewers are embracing ad-supported streaming offerings in a content environment characterized by cord-cutting and saturation of high-priced subscription services. Near term, these conditions are even more acute against a macro backdrop of rising inflation and economic uncertainty. With the combination of a large content library, digital AVOD and FAST channel capabilities, and an expanding global audience, we believe that we will be able to deliver more exciting premium entertainment for millions of value conscious viewers and drive further growth and value creation for our stockholders."

***Potential Conflicts of Interest***

35.     The breakdown of the benefits of the deal indicate that Redbox insiders are the

primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The

Board and the Company's executive officers are conflicted because they will have secured unique

benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Redbox.

36.     Notably, Company insiders, currently own large, illiquid portions of Company stock, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction.  Notably, while the Registration Statement provides the following it fails to provide an accounting of the amount of merger consideration that these holdings will convert to upon the consummation of the Proposed Transaction:

|  | Shares Beneficially Owned by Certain Beneficial Owners and Management | | | | | |
|  | Class A Common Stock | | Class B Common Stock | | Combined Voting Power | |
|  | Number | % of class | Number | % of class | Number | % of class |
| **5% Stockholders** | | | | | | |
| Redwood Holdco LP(1) | — | — | 32,770,000 | 100% | 32,770,000 | 72.20% |
| aport Global Asset Management LLC(2) | 4,363,251 | 34.58% | — | — | 4,363,251 | 9.61% |
| Apollo Management Holdings LP(3) | 1,756,487 | 13.92% | — | — | 1,756,487 | 3.87% |
| Standard General LP(4) | 979,771 | 7.76% | — | — | 979,771 | 2.16% |
| Feis Equities LLC(5) | 820,100 | 6.50% | — | — | 820,100 | 1.81% |
| Atlas Diversified(6) | 750,000 | 5.94% | — | — | 750,000 | 1.65% |
| **Directors and Named Executive Officers:** | | | | | | |
| Galen C. Smith | 576,036 | 4.57% | — | — | 576,036 | 1.27% |
| Jason K. Kwong | 345,622 | 2.74% | — | — | 345,622 | 0.76% |
| Kimberly Kelleher | 8,640 | 0.07% | | | 8,640 | 0.02% |
| Michael F. Feldner | 172,811 | 1.37% | — | — | 172,811 | 0.38% |
| Frederick W. Stein | 172,811 | 1.37% | — | — | 172,811 | 0.38% |
| Michael D. Chamberlain | 172,811 | 1.37% | — | — | 172,811 | 0.38% |
| Christina Chu | 23,041 | 0.18% | — | — | 23,041 | 0.05% |
| Directors and executive officers as a group | 1,471,772 | 11.66% | | | 1,471,772 | 3.24% |

37.     In addition, Company insiders, currently own Company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, however the Registration Statement fails to

provide an adequate accounting of such equity awards or the consideration that their holders will receive due to the consummation of the Proposed Transaction.

38.     In addition, certain employment agreements with certain Redbox executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant and may grant each director or officer entitled to them large sums of money, compensation not shared by Plaintiff. The Registration Statement, however, does not adequately account these benefits.

39.     The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

40.     Thus, while the Merger is not in the best interest of Redbox stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

41.     On June 15, 2022, the Defendants caused to be filed with the SEC the materially misleading and incomplete Registration Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

42.     Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

a.  Adequate information regarding why the Board agreed to a Proposed Transaction which did not contain a collar mechanism;

b.  Adequate information regarding the specific powers of the strategic committee and if their approval was required for the entry into any potential strategic alternative;

c.  Adequate reasoning as to why the Board engaged multiple financial advisors as well as adequate disclosure of the scope of each financial advisors duties and the compensation paid to each individual advisor;

d.  Whether the confidentiality agreements entered into by the Company with CSSE differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

e.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including CSSE, would fall away; and

f.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Redbox and CSSE Financial Projections*

43.     The Registration Statement fails to provide material information concerning financial projections for both Redbox and CSSE provided by Redbox and CSSE management to the Board, Duff & Phelps, and Guggenheim and relied upon by Duff & Phelps and Guggenheim in their analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading

44.     Notably the Registration Statement reveals that as part of its analyses, Duff & Phelps reviewed, "certain unaudited internal financial forecasts with respect to Redbox."

45.     Similarly, the Registration reveals that "certain unaudited internal financial forecasts with respect to CSSE" were provided to Duff & Phelps as well.

46.     Therefore, the Registration Statement should have, but fails to provide, certain information in the projections that Redbox and CSSE management provided to the Board and Duff & Phelps. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

47.     With regard to the Projection Assumptions provided by CSSE Management, the Registration Statement fails to disclose:

a.  Revenue, including all underlying necessary metrics, adjustments, and assumptions underlying the projections for years 2022E-2026E;

b.  Gross Profit Margin including all underlying necessary metrics, adjustments, and assumptions underlying the projections for years 2022E-2026E; and

c.  Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions underlying the projections for years 2022E-2026E.

48.  With regard to the CSSE Projections for CSSE provided by CSSE Management, the Registration Statement fails to disclose:

a.  Revenue, including all underlying necessary metrics, adjustments, and assumptions, including specifically: Online Networks, Distribution and Production revenues net of returns, and allowances;

b.  Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: interest, taxes, depreciation and amortization, preferred dividends, share based compensation, film library amortization and related costs, expense for bad debt and video returns, transitional expenses and other non-recurring costs; and

c.  Free Cash Flow; including all underlying necessary metrics, adjustments, and assumptions, including specifically: production content amortization, stock-based compensation, cash content spend, taxes, changes in net working capital, and other cash flow.

49.  With regard to the *CSSE Projections for Redbox* provided by CSSE Management, the Registration Statement fails to disclose:

    a.   Revenue, including all underlying necessary metrics, adjustments, and assumptions, including specifically: Legacy Business and Digital Business revenues;

    b.   Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: interest, taxes, depreciation and amortization, stock based compensation, business optimization, new business startup costs, restructuring related expenses, and other one-time non-recurring expenses; and

    c.   Free Cash Flow; including all underlying necessary metrics, adjustments, and assumptions, including specifically: Net Income, stock-based compensation, depreciation and amortization, taxes, changes in net working capital, and other cash flow.

50.    With regard to the *CSSE Pro Forma Combined Projections* for CSSE provided by CSSE Management, the Registration Statement fails to disclose:

    a.   Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: interest, taxes, depreciation and amortization, preferred dividends, share based compensation, film library amortization and related costs, expense for bad debt and video returns, transitional expenses, and other non-recurring costs; and

    b.   Free Cash Flow; including all underlying necessary metrics, adjustments, and assumptions, including specifically: Net Cash Flow from Operating Activities and expected capital expenditures synergies.

51.     With regard to the Redbox Projections provided by Redbox Management, the Registration Statement fails to disclose:

> a.  Revenue, including all underlying necessary metrics, adjustments, and assumptions, including specifically: Legacy Business and Digital Business revenues;
>
> b.  Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: interest, taxes, depreciation and amortization, stock based compensation, business optimization, new business startup costs, restructuring related expenses, and other one-time non-recurring expenses; and
>
> c.  Free Cash Flow; including all underlying necessary metrics, adjustments, and assumptions, including specifically: Net Income (Loss), stock based compensation, depreciation and amortization, changes in net working capital, and investments in original content acquisitions.

52.     With regard to the Redbox Management Pro Forma Projections for Redbox, the Registration Statement fails to disclose:

> a.  Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: interest, taxes, depreciation, and amortization, stock based compensation, business optimization, new business startup costs, and restructuring related and other one-time non-recurring expenses; and

b.  Free Cash Flow; including all underlying necessary metrics, adjustments, and assumptions, including specifically: Net Cash Flow from Operating Activities and expected capital expenditures synergies.

53.     The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

54.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

55.     Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the Merger Consideration's true worth, the accuracy of Duff & Phelps's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Guggenheim*

56.     In the Registration Statement, Guggenheim describes its respective fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for,

underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

57.   With respect to the *Redbox Discounted Cash Flow Analyses*, the Registration Statement fails to disclose:

    a.   The inputs, metrics, and assumptions used to determine a discount rate range of 8.50% – 10.50%;

    b.   Redbox's Weighted Average Cost of Capital;

    c.   The terminal value calculated for Redbox;

    d.   The inputs, metrics, and assumptions used to determine perpetual growth rates of Redbox's terminal year normalized unlevered free cash flow of 0.00% – 1.00%;

    e.   The inputs, metrics, and assumptions used to determine a discount rate range of 9.50% – 11.50% with respect to Synergies; and

    f.   The inputs, metrics, and assumptions used to determine a range of perpetual growth rates of 1.00% to 2.00% with respect to Synergies.

58.   With respect to the *Redbox Comparable Company Sum-of-the-Parts Analysis*, the Registration Statement fails to disclose:

    a.   The inputs, metrics, and assumptions used to determine a reference range of enterprise value to 2023E EBITDA multiples of 4.0x to 6.0x for legacy businesses; and

    b.   The inputs, metrics, and assumptions used to determine a reference range of enterprise value to 2023E revenue multiples of 1.0x to 2.5x for digital businesses.

59.     With respect to the *Equity Research Analyst Stock Price Targets* for Redbox, the Registration Statement fails to disclose:

  a.   The specific individual estimate Price targets consulted; and

  b.   The identity of the Wall Street equity research analysts and firms who produced each individual estimate.

60.     With respect to the *CSSE Discounted Cash Flow Analyses*, the Registration Statement fails to disclose:

  a.   The inputs, metrics, and assumptions used to determine a discount rate range of 11.50% – 13.50%;

  b.   CSSE's Weighted Average Cost of Capital;

  c.   The terminal value calculated for CSSE; and

  d.   The inputs, metrics, and assumptions used to determine a reference range of perpetual growth rates of CSSE's terminal year normalized unlevered free cash flow of 2.00% – 3.00%.

61.     With respect to the *CSSE Comparable Company Analysis*, the Registration Statement fails to disclose:

  a.   The name of each company compared;

  b.   The specific metrics for each company compared; and

  c.   The inputs, metrics, and assumptions used to determine a reference range of enterprise value to 2023E revenue multiples of 1.0x to 2.5x.

62.     With respect to the *Equity Research Analyst Stock Price Targets* for CSSE, the Registration Statement fails to disclose:

  a.   The specific individual estimate Price targets consulted; and

  b. The identity of the Wall Street equity research analysts and firms who produced each individual estimate.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Duff & Phelps*

63. In the Registration Statement, Duff & Phelps describes its respective fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or the basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

64. With respect to the *Redbox Standalone DCF Analysis*, the Registration Statement fails to disclose:

  a. The value of stock-based compensation expenses;

  b. The inputs, metrics, and assumptions used to determine a terminal earnings before interest, taxes, depreciation and amortization ("EBITDA") multiple range of 4.25x to 5.25x;

  c. The inputs, metrics, and assumptions used to determine a weighted average cost of capital range of 13-15%;

  d. The weighted average cost of capital for the Company's Legacy business; and

  e. The weighted average cost of capital for the Company's Digital business.

65. With respect to the *Selected Public Companies Analysis*, the Registration Statement fails to disclose:

  a. The inputs, metrics, and assumptions used to determine an EBITDA multiple range of 5.25x to 6.25x.

66.     With respect to the *Pro Forma Surviving Company DCF Analysis*, the Registration Statement fails to disclose:

    a.   The terminal value calculated for the surviving Pro Forma Company;

    b.   The inputs, metrics, and assumptions used to determine a range of terminal EBITDA multiples of 7.0x to 9.0x;

    c.   The inputs, metrics, and assumptions used to determine a weighted average cost of capital ranging from 12.5 percent to 14.5 percent; and

    d.   The discount rate range used in the analyses.

67.     With respect to the *Summary of Selected Public Companies Analysis — Pro Forma Surviving Company*, the Registration Statement fails to disclose:

    a.   The name of each company compared;

    b.   The specific metrics for each company compared; and

    c.   The inputs, metrics, and assumptions used to determine an EBITDA multiple range of 7.0x to 9.0x.

68.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

69.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Redbox stockholder.

70.     As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

71.     Plaintiff repeats all previous allegations as if set forth in full herein.

72.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

73.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

74.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

75.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

76.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

77.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

78.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

79.     Plaintiff repeats all previous allegations as if set forth in full herein.

80.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants

knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

81.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

82.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Redbox's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

83.     The Individual Defendants acted as controlling persons of Redbox within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Redbox to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Redbox and all of its

employees.  As alleged above, Redbox is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to comply with the Exchange Act and disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: June 22, 2022                    **BRODSKY & SMITH**

By: _____
Evan J. Smith
240 Mineola Blvd.
Mineola, NY 11501
esmith@brodskysmith.com
Phone: (516) 741-4977

*Attorneys for Plaintiff*